NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ : | **Hon. Dennis M. Cavanaugh** |
| MICHAEL PIGNATARO and : | |
| THOMPSON R. CHASE, : | ## OPINION |
| : | |
| Plaintiffs, : | Civil Action No. 04-CV-1767 (DMC) |
| : | |
| v. : | |
| : | |
| THE PORT AUTHORITY OF NEW : | |
| YORK AND NEW JERSEY, a bi-state : | |
| agency, JOHN DOES (1-5) (Agents, : | |
| representatives and/or employees of the Port : | |
| Authority of New York and New Jersey, : | |
| : | |
| Defendants. : | |
| _____ : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiffs Michael Pignataro ("Pignataro") and

Thompson R. Chase's ("Chase," and collectively, "Plaintiffs") motion for summary judgment

pursuant to Fed. R. Civ. P. 56; and to determine damages regarding this Court's Opinion dated

February 14, 2006.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After carefully

considering the submissions of the parties, and based upon the following, it is the finding of this

Court that Plaintiffs' motion for summary judgment regarding whether Defendant Port Authority of

New York and New Jersey ("Defendant") willfully violated the Fair Labor Standards Act, 29 U.S.C.

§ 201, *et seq*. ("FLSA") is **denied**; and Pignataro is entitled to $67,907.23 in unpaid overtime, plus

$19,177.10 in prejudgment interest, for a total award of $87,084.33; and Chase is entitled to

$50,626.80 in unpaid overtime, plus $14,297.14 in prejudgment interest, for a total award of $64,923.94.

I.      **BACKGROUND**[1]

   A.      Factual Background

Defendant is the owner and operator of various transportation terminals and commerce facilities within the Port of New York district, the bi-state area that lies within a twenty-five mile radius of the Statue of Liberty.  Defendant hired Pignataro as an Operations Duty Supervisor in 1982. Pignataro began working as a helicopter pilot approximately one month later.  Pignataro retired in 2004.  Defendant hired Chase in 1977 and he was promoted to the position of helicopter pilot in 1982.  As of February 2006, Chase held the position of Captain of the Airborne Unit.

Defendant classified helicopter pilots as "professional employees," who are exempt from overtime compensation of time and one-half pursuant to the FLSA.  Accordingly, Plaintiffs were paid the same straight hourly rate for overtime.

   B.      Procedural Background

Plaintiffs filed a Complaint on April 15, 2004, alleging that Defendant violated the FLSA by failing to pay proper overtime rates to its helicopter pilots.  Plaintiffs moved, and Defendant cross-moved, for summary judgment.

On February 14, 2006, this Court issued an Opinion and Order denying Defendant's motion for summary judgment and granting Plaintiffs' motion for summary judgment in part as to liability. This Court found that Defendant had improperly categorized Plaintiffs as professional employees.

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

Damages due to Plaintiffs, however, were unresolved in this Court's Opinion.  This Court now considers the remaining issue from Plaintiffs' motion for summary judgment: whether Defendant willfully violated the FLSA by categorizing Plaintiffs as professional employees.  A defendant is liable for three years of damages for willful violations of the FLSA, but only two years of damages for nonwillful violations.  See 29 U.S.C. § 255(a).

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences – including issues of credibility – in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State

of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts

v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.   DISCUSSION

Plaintiffs' motion for summary judgment regarding whether Defendant willfully violated the

FLSA is denied; and Pignataro is entitled to $67,907.23 in unpaid overtime, plus $19,177.10 in

prejudgment interest, for a total award of $87,084.33; and Chase is entitled to $50,626.80 in unpaid

overtime, plus $14,297.14 in prejudgment interest, for a total award of $64,923.94.

A.   Nonwillful Violation

Pursuant to the FLSA, a cause of action for unpaid overtime "may be commenced within two

years after the cause of action accrued."  29 U.S.C. § 255(a).  "A cause of action under FLSA

'accrues' whenever the employer fails to pay the required compensation for any particular

workweek" and an "action is commenced on the date a complaint is filed."  Wolfslayer v. Ikon

Office Solutions, Inc., No. 03-6709, 2004 U.S. Dist. LEXIS 22625, at *34 (E.D. Pa. Nov. 8, 2004)

(citation omitted).  "If, however, the cause of action arises out of a willful violation [of the FLSA],

it may be commenced within three years after the cause of action accrued."  Id. (citing 29 U.S.C. §

255(a)).  Plaintiffs seek three years of damages preceding the commencement of this action for

Defendant's willful violation of the FLSA.  Defendant's violation, however, was not wilful, and

Plaintiffs are thereby owed two years of unpaid overtime.

"[A] violation of the relevant sections of the FLSA is willful if the employer knew or showed

reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  Brock v.

Richland Shoe Co., 799 F.2d 80, 81 (3d Cir. 1986); see also Trans World Airlines, Inc. v. Thurston,

4

469 U.S. 111, 126 (1985). "In common usage, the word 'willful' is synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1985) (citation omitted); see also Brock, 799 F.2d at 83 ("willfulness is akin to intentionality"). The term "willful" "is generally understood to refer to conduct that is not merely negligent." Id. Importantly, the Supreme Court of the United States has stated "that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, [making] it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." McLaughlin, 486 U.S. at 132. Here, Defendant's violation of the FLSA is ordinary and does not rise to the level of willfulness required to extend the statute of limitations.

A violation is not willful merely because "the employer ha[d] an awareness of the possible application of the FLSA." Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir. 1971), overruled by McLaughlin, 486 U.S. at 132. Here, Plaintiffs assert that the violation was willful because Defendant was aware of the FLSA requirements for classifying employees as "professional," but nonetheless characterized the pilots as professional employees. Asking whether Defendant knew the FLSA was "in the picture" is an inappropriate willfulness standard because it "virtually obliterates any distinction between willful and nonwillful violations." McLaughlin, 486 U.S. at 132-33. Plaintiffs need to demonstrate something more than mere awareness of the statute to prevail on the willfulness issue.

Plaintiffs contend that Defendant's violation of the FLSA was willful because their repeated requests for salary increases were either ignored or unsuccessful. This conclusion is a leap in logic and does not address the relevant question of whether Defendant willfully – that is, knowingly,

5

intentionally or recklessly – violated the overtime provisions of the FLSA.  Plaintiffs draw the Court's attention to their unsuccessful attempts at increasing *base pay*.  For example, Plaintiffs contend the violation was willful because salary surveys were not conducted, despite management's assurances; their salaries did not compare to the private sector; they were paid less than mechanics and other personnel in their unit; and management failed to address salary issues when requested. These instances do not demonstrate Defendant's reckless disregard for the consequences of its actions as they relate to its categorization of pilots as professional employees.  Plaintiffs' attempts to increase base pay have no bearing on whether they were entitled to overtime under the FLSA and these facts are immaterial to the willfulness issue.

The process by which Defendant arrived at its decision to characterize the pilots as professional employees fails to indicate that it acted with a reckless disregard of the consequences of its decision or that it knew the characterization was in violation of the statute.  Defendant apparently acted reasonably when making its determination.  "If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful."  McLaughlin, 486 U.S. at 134 n.13.  Defendant's law department conducted "extensive research on helicopter pilots" before concluding that pilots be characterized as professional employees.  Defendant had a rational basis for its conclusions because Paul v. Petroleum Equipment Tools Co., the only federal appellate authority on point, holds that helicopter pilots are exempt from the FLSA's overtime provisions.  See 708 F.2d 168 (5th Cir. 1983).  One of the strongest factors "of willfulness would be that an employer deliberately ignored judicial invalidations of plans similar to its own."  EEOC v. Westinghouse]

6

Elec. Corp., 869 F.2d 696, 712 (3d Cir. 1989).[2]  "While stubborn non-compliance in the face of contrary judicial authority might well constitute willfulness, good-faith adherence to, and defense of, those policies when the law is unsettled does not establish a willful violation."  Id. at 713.  Prior to this Court's decision dated February 14, 2006, the FLSA's overtime provision as it related to helicopter pilots was unaddressed by the United States Court of Appeals for the Third Circuit. Defendant had a good faith belief that it was complying with the statute, especially because it complied with the only judicial authority on point.  Nothing about Defendant's actions indicate a reckless disregard for the consequences, but rather, the facts indicate that Defendant made a good faith effort to comply with the law.  Defendant's actions were reasonable and, therefore, its violation of the FLSA was not willful.

      B.    Damages

     A defendant is liable for three years of damages for willful violations of the FLSA, but only two years of damages for nonwillful violations.  See 29 U.S.C. § 255(a).  Because Defendant's violation was not willful, Plaintiffs are each entitled to two years of backpay preceding the commencement of this action on April 15, 2004.  Plaintiffs submitted their bi-weekly pay stubs for the calculation of damages: Pignataro submitted records for the entire period at issue; and Chase was unable to provide records for fourteen two-week periods.  Because Defendant paid Plaintiffs bi-weekly and the Court cannot deduce from the records provided how much overtime Plaintiffs worked on any given day, the Court can only include or omit entire pay periods for the calculation

---

[2] Although Westinghouse pertained to a violation of the Age Discrimination Employment Act, the same standard of willfulness applies to statute of limitations issues under the FLSA.  See 869 F.2d at 712.

of damages.  Not surprisingly, the earliest and latest pay periods at issue overlap, respectively, with the accrual and commencement dates of this action: the earliest period for consideration ran from April 14, 2002 to April 27, 2002, while the cause of action accrued on April 15, 2002; the latest period for consideration ran from April 11, 2004 to April 24, 2004, while the action commenced on April 15, 2004.  In the interest of equity, this Court has included the former period, but not the latter.

This Court "has [the] power to grant interest on back pay awards under the Fair Labor Standards Act."  Brock v. Richardson, 812 F.2d 121, 125 (3d Cir. 1987) (citing Donovan v. Sovereign Sec., Ltd., 726 F.2d 55, 58 (2d Cir. 1984)).  Prejudgment interest serves the compensatory purposes of "making up for the delay in receiving the money, during which time the employees were denied its use, and by partially offsetting the reduction in the value of the delayed wages caused by inflation."  Donovan, 726 F.2d at 58 (citation omitted).  This Court finds it equitable to award interest on damages from the commencement of this action through judgment.  Plaintiffs, however, have not submitted a calculation of interest or a proposed method by which the Court should calculate interest.  There is much debate over the proper method for calculating prejudgment interest. See Taylor v. Cent. Pa. Drug and Alcohol Servs. Corp., 890 F. Supp. 360, 368-69 (M.D. Pa. 1995). Among them, the "[Internal Revenue Service ("IRS")] overpayment rates, 26 U.S.C. § 6621(a)(1)," is "the most logically consistent with the purpose for awarding prejudgment interest, *i.e.*, to place the plaintiff in the position [he] would have been in had [he] not been unlawfully deprived of [his] salary."  Taylor, 890 F. Supp. at 396 (noting that several other courts in the Third Circuit have

adopted IRS interest rate calculation under the same rationale).[3]  This Court adopts the approach set

forth in 26 U.S.C. § 6621(a)(1).[4]

Pignataro is entitled to $67,907.23 in unpaid overtime, plus $19,177.10 in prejudgment

interest, for a total award of $87,084.33 consistent with the following calculation:

<u>2002 Overtime</u>
4/14/2002 - 6/8/2002:
    263.75 hours  x  $45.58621/hour  x  ½ =    $6,011.68
6/9/2002 - 1/4/2003
    863.5 hours  x  $46.73103/hour  x  ½ =    <u>$20,176.12</u>

    Total 2002 Overtime Due:    $26,187.80

<u>2003 Overtime</u>
1/5/2003 - 7/19/2003
    981 hours  x  $46.73103/hour  x  ½ =    $22,921.57
7/20/2003 - 1/3/2004
    478.5 hours  x  $48.13793/hour  x  ½ =    <u>$11,517.00</u>

    Total 2003 Overtime Due:    $34,438.57

<u>2004 Overtime</u>
1/4/2004 - 4/10/2004
    302.5 hours  x  $48.13793/hour  x  ½ =    <u>$7,280.86</u>

    Pre-interest Total:    $67,907.23

---

[3] Although <u>Taylor</u> pertained to a civil rights violation, the Court finds this distinction immaterial for the purposes of calculating interest.

[4] The Court relies on the Federal Reserve Board's intended federal funds rate as its basis for calculating the applicable interest rate, <u>available at</u> http://www.federalreserve.gov/fomc/fundsrate.htm (last visited July 22, 2008).

Interest

| Period | Rate | Interest |
|--------|------|----------|
| 4/15/2004 - 6/30/2004 | 4% | $574.60 |
| 7/1/2004 - 9/30/2004 | 4% | $679.07 |
| 10/1/2004 - 12/31/2004 | 5% | $848.84 |
| 1/1/2005 - 3/31/2005 | 5% | $848.84 |
| 4/1/2005 - 6/30/2005 | 6% | $1,018.61 |
| 7/1/2005 - 9/30/2005 | 6% | $1,018.61 |
| 10/1/2005 - 12/31/2005 | 7% | $1,188.38 |
| 1/1/2006 - 3/31/2006 | 7% | $1,188.38 |
| 4/1/2006 - 6/30/2006 | 8% | $1,358.14 |
| 7/1/2006 - 9/30/2006 | 8% | $1,358.14 |
| 10/1/2006 - 12/31/2006 | 8% | $1,358.14 |
| 1/1/2007 - 3/31/2006 | 8% | $1,358.14 |
| 4/1/2007 - 6/30/2007 | 8% | $1,358.14 |
| 7/1/2007 - 9/30/2007 | 8% | $1,358.14 |
| 10/1/2007 - 12/31/2007 | 8% | $1,358.14 |
| 1/1/2008 - 3/31/2008 | 7% | $1,188.38 |
| 4/1/2008 - 6/30/2008 | 5% | $848.84 |
| 7/1/2008 - 7/29/2008 | 5% | $267.57 |

Total Interest Due: $19,177.10

**TOTAL Award to Pignataro:** **$87,084.33**

Chase is entitled to $50,626.80 in unpaid overtime, plus $14,297.14 in prejudgment interest,

for a total award of $64,923.94 consistent with the following calculation:

2002 Overtime
4/14/2002 - 6/8/2002:
      196.5 hours **x** $45.58621/hour **x** ½ =    $4,459.87
6/9/2002 - 1/4/2003
      777.25 hours **x** $46.73103/hour **x** ½ =   $18,160.85

      Total 2002 Overtime Due:    $22,620.72

<u>2003 Overtime</u>
1/5/2003 - 7/19/2003
     493.5 hours  x  $46.73103/hour  x  ½  =    $11,530.88
7/20/2003 - 1/3/2004
     148.25 hours  x  $48.13793/hour  x  ½  =    <u>$3,568.22</u>

     Total 2003 Overtime Due:     $15,099.10

<u>2004 Overtime</u>
1/4/2004 - 4/10/2004
     536.25 hours  x  $48.13793/hour  x  ½  =    <u>$12,906.98</u>

     Pre-interest Total:     $50,626.80

<u>Interest</u>

| *Period* | *Rate* | *Interest* |
|---|---|---|
| 4/15/2004 - 6/30/2004 | 4% | $428.38 |
| 7/1/2004 - 9/30/2004 | 4% | $506.27 |
| 10/1/2004 - 12/31/2004 | 5% | $632.84 |
| 1/1/2005 - 3/31/2005 | 5% | $632.84 |
| 4/1/2005 - 6/30/2005 | 6% | $759.40 |
| 7/1/2005 - 9/30/2005 | 6% | $759.40 |
| 10/1/2005 - 12/31/2005 | 7% | $885.97 |
| 1/1/2006 - 3/31/2006 | 7% | $885.97 |
| 4/1/2006 - 6/30/2006 | 8% | $1,012.54 |
| 7/1/2006 - 9/30/2006 | 8% | $1,012.54 |
| 10/1/2006 - 12/31/2006 | 8% | $1,012.54 |
| 1/1/2007 - 3/31/2006 | 8% | $1,012.54 |
| 4/1/2007 - 6/30/2007 | 8% | $1,012.54 |
| 7/1/2007 - 9/30/2007 | 8% | $1,012.54 |
| 10/1/2007 - 12/31/2007 | 8% | $1,012.54 |
| 1/1/2008 - 3/31/2008 | 7% | $885.97 |
| 4/1/2008 - 6/30/2008 | 5% | $632.84 |
| 7/1/2008 - 7/29/2008 | 5% | $199.48 |

     Total Interest Due:     $14,297.14

     **TOTAL Award to Chase:**     **$64,923.94**

**IV.** **CONCLUSION**

For the reasons stated, it is the finding of this Court that Plaintiffs' motion for summary judgment regarding whether Defendant willfully violated the FLSA is **denied**; Pignataro is entitled to $67,907.23 in unpaid overtime, plus $19,177.10 in prejudgment interest, for a total individual award of $87,084.33; and Chase is entitled to $50,626.80 in unpaid overtime, plus $14,297.14 in prejudgment interest, for a total individual award of $64,923.94.  An appropriate Order accompanies this Opinion.

       S/ Dennis M. Cavanaugh      
Dennis M. Cavanaugh, U.S.D.J.

Date:        July 29, 2008
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File

12